CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 17 2012

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANTHONY HALL, | ) | CASE NO. 7:12CV00406 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | |
| L. J. FLEMING, ET AL., | ) | By: James C. Turk |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

Anthony Hall, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant prison officials intimidated and threatened him and called him a racially offensive name, punished him with segregated confinement, and housed him in a cell with a malfunctioning toilet, in violation of his constitutional rights. Upon review of the record, the court summarily dismisses the action without prejudice under 28 U.S.C. § 1915A(b)(1) and denies Hall's motion for interlocutory injunctive relief and other pending motions.

I

Hall is an inmate at Keen Mountain Correctional Center. Hall states that he has been confined in the Virginia Department of Corrections ("VDOC") for 25 years and is eligible for discretionary parole consideration. Hall's submissions offer the following sequence of events related to his claims.[1]

On June 19, 2012, during count procedures, Hall remained seated in his cell after officers repeatedly ordered him to stand for count. Officers Sandstrom and Keen then approached Hall in a manner that he interpreted as "intimidating [and] threatening." The officers told Hall, "Your

---

[1] Hall's factual allegations appear in his complaint and attached grievances and in his affidavit (ECF Nos. 3 & 9).

black ass [is] going to Special Housing Unit ("SHU")." Sandstrom gave Keen a pair of handcuffs, and Keen wrapped them around his hand as if he would use them as a weapon against Hall. Just then, Lt. Shreve arrived at the cell and ordered Sgt. Ratliff and other members of the Security Force Team to restrain Hall and escort him to the SHU, which they did. Hall asserts that Sandstrom and Keen verbally threatened to harm him and violated VDOC procedures regulating what action officers can take in response to an inmate's refusal to comply with count procedures. Hall also alleges that Keen fabricated a disciplinary charge that Hall had threatened to harm Keen during the June 19, 2012 incident.

Officer Ratliff, as alternate hearing officer, presided at the disciplinary hearing on July 3, 2012, on the charge that Hall threatened Keen. Because Ratliff was part of the security team that escorted Hall to the SHU on on June 19, 2012, Hall claims that Ratliff could not be impartial in making decisions about the disciplinary charge. Officer Lowe, the regular hearing officer, withheld this information about Ratliff during Hall's appeal of his disciplinary conviction. Hall also complains that Ratliffe conducted the hearing more than the prescribed 15 days after the incident.

Defendants Sykes and Taylor allegedly conducted an unfair "ICA" hearing, after which Hall remained in segregation, unable to participate in education classes, vocational training, or other activities that may affect his chances for discretionary parole. On August 6, 2012, officials brought a disciplinary charge against Hall for disobeying a direct order, after he refused to return to the general prison population, because he feared for his safety.

Hall complains that the toilet in his SHU cell posed a health risk. Specifically, Hall alleges that human feces and urine from other inmates' cells backed up into Hall's cell toilet.

## II

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). To state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege[ ] facts sufficient to state all the elements of [his or] her claim[ ]. . . ." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing other cases).

Because Hall is proceeding pro se, the court must liberally construe his complaint to allow the development of a potentially meritorious claim, if any is present. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972) (finding that court must hold pleadings filed by a pro se litigant "to less stringent standards than formal pleadings drafted by lawyers). On the other hand, the court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. Weller v. Department of Social Servs., 901 F.2d 387, 391 (4th Cir. 1990). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws

3

of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Many of Hall's claims fail to survive screening under § 1915A(b)(1) because he states no facts in support.

### A. Excessive Force, Verbal Threats, and Racial Slurs

Hall sues Sandstrom and Keen for violating his constitutional rights under the Eighth Amendment[2] and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[3] Hall asserts that Sandstrom engaged in "racism profiling . . . with language" and that Sandstrom and Keen approached Hall in "an intimidating threatening manner," "maliciously and sadistically for the very purpose to cause harm to [Hall's] well being." (ECF No. 1-1, p. 6-7.) The court finds no constitutional violation here.

"[O]nly the unnecessary and wanton infliction of pain" rises to the level of a constitutional violation. Whitley v. Albers, 475 U.S. 312, 319 (1986), abrogated on other grounds by Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175 (2010). To prove an excessive force claim, plaintiff must show that the force the officer applied was "nontrivial." Wilkins, 130 S. Ct. at 1179. "An inmate who complains of a [mere] 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Id. 130 S. Ct. at 1178 (internal quotations omitted). Similarly, mere words alone, however violent or offensive, do not amount to an assault or state a constitutionally significant claim. Wilson v. McKeller, 254 F. App'x 960, 961 (4th Cir. 2007) (rejecting inmate's claim regarding guard's use of racial slur, because "mere threats or verbal abuse, without more, do not state a cognizable claim under §

---

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law [or] deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.

1983") (citing Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979); see also Carter v. Morris, 164 F.3d 215, 219 n. 3 (4th Cir. 1999) (finding that, without more, officers' alleged use of "racial epithets" toward plaintiff did not "by itself rise to the level of a constitutional violation"); Keyes v. City of Albany, 594 F. Supp. 1147, 1155-56 (N. D. N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim" or support claim of race discrimination). Nor does the constitution "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). A guard's verbal harassment or idle threats to an inmate, even if they cause an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. Id. Courts have found, however, that a prison official's verbal threats of harm toward an inmate, together with actions reasonably perceived as steps toward carrying out the proposed harm, with no legitimate need for official action to restore order, may constitute the wanton infliction of psychological pain so as to violate the inmate's constitutional rights. See, e.g., Northington, 973 F.2d at 1524 (citing Hudson v. Mcmillian, 503 U.S. 1, 16 (1992) ((Blackmun, J., concurring) (noting incident of "guard placing a revolver in an inmate's mouth and threatening to blow [the] prisoner's head off" as an unnecessary and wanton infliction of psychological pain in violation of Eighth Amendment) (omitting citations).

    Applying these principles, the court cannot find that Hall's allegations state any viable constitutional claim against Keen or Sandstrom based on their alleged use of a racial slur and threatening words and gestures. Although Hall perceived the officers' words about his going to the SHU as threatening and racially insulting, Hall's admitted failure to stand for count after being ordered to do so gave the officers a legitimate reason to respond in some fashion to restore

order.[4] Hall does not allege facts about any actual physical contact officers made for the sole purpose of harming Hall on June 19, 2012. Moreover, Hall merely labels the officers' words as "threatening," but does not state the exact harm the officers allegedly threatened to inflict on him. Thus, Hall also does not state facts showing that an inmate could reasonably have perceived the officers' gesture with the cuffs as a step toward carrying out that threatened harm. Finally, while Hall alleges that the officers' words and actions in combination caused him great anxiety, he does not state facts demonstrating that the extent of his fears of bodily harm from the officers were reasonably connected to the officers' actual conduct or that the mental harm Hall allegedly suffered was so severe that he sought professional treatment of any kind. Based on Hall's conclusory description of the events in question, the court cannot find that Hall has stated a claim under Twombly and Hudson that the officers wantonly inflicted psychological pain on him with their words and movements so as to violate his constitutional rights. Therefore, the court summarily dismisses without prejudice Hall's claims against Sandstrom and Keen,[5] pursuant to § 1915A(b)(1), for failure to state a claim.

---

[4] The officers' alleged failure to follow VDOC procedures for addressing inmates' noncompliance with count procedures states, at most, a violation of state law. Such violations are not independently actionable under § 1983. Weller v. Dep't of Social Services, 901 F.2d 387, 392 (4th Cir. 1990). Moreover, the court declines to exercise supplemental jurisdiction over any such state law claims and dismisses them without prejudice, pursuant to 28 U.S.C. § 1367(c).

[5] Hall asserts that each of the other defendants also violated his rights under the Eighth Amendment and his due process and equal protection rights under the Fourteenth Amendment. Hall does not, however, allege facts showing how any of the other officers had any personal involvement in Keen and Sandstrom's verbal or physical actions on June 19, 2012, or any opportunity to prevent such actions. West, supra. Accordingly, the court summarily dismisses all Hall's constitutional claims arising directly from that incident.

## B. Disciplinary Proceedings

Hall makes several complaints about disciplinary proceedings on the charge Keen wrote against him for threatening bodily harm on June 19, 2012. Hall complains that Keen falsely charged him with the offense; that Ratliffe was improperly assigned as hearing officer, based on his involvement in escorting Hall to segregation on June 19, 2012; and that Lowe, as the regular hearing officer, failed to make this conflict clear during Hall's appeal. Hall also complains that no one watched the surveillance camera footage of the incident.

Hall has no actionable § 1983 claim against Defendant Keen for bringing a false disciplinary charge. Inmates have "no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Freeman v. Rideout, 808 F. 2d 949, 951 (2d Cir. 1986)); see also Gill v. Riddick, 2005 WL 755745, at *7 (N.D.N.Y. Mar.31, 2005). For reasons explained below, Hall also has no other § 1983 claim related to the disciplinary proceedings.

While convicted prisoners relinquish many rights upon being incarcerated, the due process clause mandates several procedural safeguards before an inmate may be punished with the loss of earned good conduct time or placement in solitary confinement for violating prison disciplinary rules; among these required procedural protections are a fair and impartial decisionmaker and some evidence to support a guilty finding. Wolff v. McDonnell, 418 U.S. 539, 571 (1974), abrogated in part by Sandin v. Conner, 515 U.S. 472 (1995); Superintendent v. Hill, 472 U.S. 445, 456 (1985). To trigger the Wolff protections, plaintiff must allege facts suggesting that his disciplinary penalty (a) placed him under conditions, in administrative segregation or solitary confinement, that constituted an "atypical and significant hardship on the [him] in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484, or (b)

"inevitably affected the duration of his sentence." Id. at 487. "[A] state's failure to abide by its own law as to procedural protections is not a federal due process issue." Brown v. Angelone, 938 F. Supp. 340, 344 (W.D. Va. 1996) (citing Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990)).

Hall fails to allege facts suggesting that he was entitled to the Wolff protections at his disciplinary hearing. He does not allege that his penalty included placement in confinement conditions posing any "atypical and significant hardship" so as to create a liberty interest in avoiding them.[6] Hall also does not allege that he lost any earned good conduct time or demonstrate that the disciplinary penalty "inevitably" affected his chances to persuade the parole board that he is appropriate for discretionary parole.[7] As Hall thus fails to demonstrate that he had a protected liberty interest at stake, his complaints about the disciplinary proceedings do not

---

[6] The only mention Hall makes of conditions in segregation is the temporary problem with his toilet, which cannot qualify as an "atypical and significant hardship," particularly when he alleges no resulting harm. In addition, Hall's failure to allege that he has suffered, or is likely to suffer, any physical harm as a result of the toilet problems forecloses him from presenting an actionable Eighth Amendment claim about the toilet as a hazardous living condition. See Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (finding that inmate claiming cruel and unusual prison conditions must "produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," or "demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"). In addition, Hall fails to allege that any of the named defendants knew about, or acted with deliberate indifference to the problems with his toilet, and so does not state any § 1983 claim against them regarding this condition.

[7] Hall complains that segregated confinement deprived him of the chance to work or attend classes. He does not, however, demonstrate (nor could he) that lack of these privileges had any definitive effect on his parole opportunities so as to "inevitably" lengthen his total term of confinement in prison and create a protected liberty interest. See, i.e., Sandin, 515 U.S. at 487 ("The decision to release a prisoner rests on a myriad of considerations. And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record. . . The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause."). Moreover, in Hall's case, his refusal to disobey orders to rejoin the general population, and not any disciplinary action by the defendants, has caused his continued confinement in segregation.

present federal due process claims, and the court summarily dismisses them under § 1915A(b)(1).

Furthermore, the court declines to exercise supplemental jurisdiction over any claims Hall may have that defendants violated state law or prison procedures by failing to view the video evidence, to insist on a hearing officer totally uninvolved in with Hall's cell transfer on June 19, 2012, or to recognize these alleged defects on appeal. See 28 U.S.C. § 1367(c). The court dismisses without prejudice all of Hall's due process claims related to the disciplinary charge that Hall verbally threatened to harm Keen, including those against Keen, Lowe, and Ratliffe.

**C. No Personal Involvement**

Hall fails to state sufficient facts in support of his remaining claims, concerning each defendant's personal actions in violation of his rights. Hall alleges merely that each defendant violated his constitutional rights in unspecified ways and that: Warden Fleming and Mr. Cox failed "to take reasonable measures to abate" an unspecified, known risk of harm to Hall;[8] Mr. Sykes, as SHU unit manager, and Mrs. Taylor, as programs manager, failed to give Hall an impartial ICA hearing and did not "respond reasonably to safeguard plaintiff's constitutional right"; and that Mr. Fuller, as B-Building manager, failed to "rectify the risk of harm" to Hall. Hall cannot build an actionable § 1983 claim on such mere conclusions not based in facts.

---

[8] Hall does not state facts showing any of these defendants knew before June 19, 2012, of a specific risk that Sandstrom and Keen would take the actions that allegedly traumatized Hall. Therefore, the court does not address Hall's claim as one alleging any failure to protect him from harm by preventing Sandstrom's and Keen's actions in the first place. See Pressly v. Hutto, 816 F.2d 977 (4th Cir. 1987) (finding prison guard violates Eighth Amendment when he is deliberately indifferent to a specific known risk of harm to a specific inmate). See also Farmer v. Brennan, 511 U.S. 825, 837 (1994) (finding that to prove deliberate indifference, plaintiff must show that "a prison official acted or failed to act despite his knowledge" of "an excessive risk to inmate health or safety").

Twombly, 550 U.S. at 555. Therefore, the court must summarily dismiss Hall's claims against these defendants without prejudice under § 1915A(b)(1) for failure to state a claim.

### D. Administrative Segregation and Transfer

The court is also satisfied that even if Hall amended his complaint to provide factual details about each defendants' actions or inactions related to Hall's segregated confinement at Keen Mountain, his situation does not present any constitutionally significant claims. When a defendant is lawfully convicted and confined to prison, he loses a significant interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Inmates have no protected liberty interest in being housed in any particular prison or in a prison or housing unit with less restrictive conditions. Meachum v. Fano, 427 U.S. 215, 224-25 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").

To state a claim that he has a protected liberty interest requiring federal procedural protections before placement in administrative segregation, an inmate must first meet the "atypical and significant hardship" standard under Sandin, 515 U.S. at 484. "An inmate does not have a constitutional right to be placed in a specific security classification or facility, and custodial classifications do not create a major disruption in a prisoner's environment." Williams v. Johnson, No. 7:10-cv-00377, 2010 WL 3395700, at *2 (W.D. Va. 2010) (citing Sandin, 515 U.S. at 486-87).

As stated, Hall fails to show that he has a protected liberty interest related to his segregated confinement status at Keen Mountain. Hall fails to present any facts concerning the conditions of his confinement, to offer any respect in which those conditions present an unusual difficulty or discomfort when compared to other VDOC confinement categories, or to

demonstrate that they inevitably affect the length of his confinement. Hall also states no constitutional claim against any of the defendants for failing to transfer him to another institution, as he has no constitutional right to be housed in any particular facility or with any certain set of privileges.[9] Meachum, 427 U.S. 215, 224-25. The court must summarily dismiss Hall's § 1983 due process claims, regarding his segregation status at Keen Mountain and his desire for a transfer, under § 1915A(b)(1) for failure to state a claim.

Moreover, Hall's complaints that prison officials have failed to follow state classification or transfer procedures, or the grievance procedures,[10] do not present any federal due process issue actionable under § 1983. See Riccio, 907 F. 2d at 1469. The court declines to exercise supplemental jurisdiction over any such claims under state law, and dismisses them without prejudice under § 1367(c).

**E. Toilet Malfunctions**

Hall fails to allege facts stating an actionable Eighth Amendment claim concerning the alleged problems with the toilet in his cell. Because Hall does not allege facts suggesting that he, personally, has suffered, or is likely to suffer, any serious or significant injury from this

---

[9] For the same reason, Hall fails to demonstrate that he is entitled to interlocutory injunctive relief ordering that he be transferred to another institution. See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008) (finding that the party seeking preliminary injunction must demonstrate that: (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest"). Because Hall's allegations state no underlying constitutional claim, he fails to show any likelihood of success on the merits, and the court denies his motion for interlocutory relief accordingly.

[10] Inmates do not have a constitutionally protected right to a grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); See, e.g., Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases). Because a state grievance procedure does not confer any substantive right upon prison inmates, the defendant officials' alleged failure to comply with the state prison's grievance procedures, including the alleged improper investigation of Hall's grievances, is not actionable under § 1983.

condition, he fails to demonstrate a deprivation of basic human needs that is, objectively, sufficiently serious to have constitutional implications. See Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). The court summarily dismisses without prejudice Hall's claim concerning his toilet, pursuant to § 1915A(b)(1), as frivolous.

### III

In conclusion, the court dismisses Hall's § 1983 complaint in its entirety without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim and dismisses all state law claims without prejudice, pursuant to § 1367(c). The court also denies Hall's motion for interlocutory injunctive relief and his request for transfer (ECF Nos. 12 & 15). Because Hall alleges no claim on which he is entitled to relief, he has no right to engage in discovery, and the court denies his motions and requests regarding discovery (ECF Nos. 11, 16, & 17). An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 17th day of October, 2012.

_/s/ James C. Turk_
Senior United States District Judge